UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA

Zezy R. Farfan, and Zezy R. Farfan, by and through her guardian, Elizabeth V. Alva,

Plaintiff

v.

Station Casinos LLC, et al.,

Defendants

Case No. 2:20-cv-01516-CDS-NJK

**Order Granting in Part and Denying in Part Defendants' Motion for Summary Judgment and Denying Plaintiff's Motions to Strike**

[ECF Nos. 38, 56, 57]

This is an employment action. Plaintiff Zezy R. Farfan ("Zezy") alleges that defendants Station Casinos LLC ("Station") and NP Red Rock, LLC ("Red Rock") failed to hire her and accommodate her disability in violation of the Americans with Disabilities Act (ADA) and Nevada state law regarding disability discrimination (Nevada Revised Statutes (NRS) § 613.330). ECF No. 1 at 12–15. Defendants move for summary judgment. ECF No. 38. The motion is fully briefed. ECF No. 49, ECF No. 54. Farfan moves to strike defendants' reply brief (ECF No. 56) as well as the declaration of Jennifer Johnson attached to defendants' reply brief (ECF No. 57). Both motions are fully briefed. ECF Nos. 60, 61, 62, 63. For the following reasons, I grant in part and deny in part defendants' motion for summary judgment and deny Farfan's motions to strike.

I.   Background

Zezy has an intellectual disability characterized by substantial limitation in brain functioning including affecting communication skills.[1] ECF No. 1 at ¶ 22. She was a client of

---

[1] The court declines defendants' request to take judicial notice of Zezy's DSM-5 diagnosis as it appears to be hearsay and is unaccompanied by expert medical testimony. *See Rohan v. Chater*, 98 F.3d 966, 970–71 (7th Cir. 1996) (lawyers and judges should resist "the temptation to play doctor and make their own independent medical findings" and "health professionals, in particular psychiatrists, not lawyers or judges, are the experts on [mental health issues]") (citing *Wilder v. Chater*, 64 F.3d 335 (7th Cir. 1995)). Even to the extent the court did consider the DSM-5 diagnosis in the resolving the summary judgment

Opportunity Village (OV), an organization which serves adults in the Southern Nevada community with intellectual and related disabilities. *Id.* at ¶ 23. Zezy participated in OV's Pathway to Work program, which provided her with real on-the-job training for six months at Boulder Station between August 2017 and January 2018, where she worked in the Internal Maintenance Department as a porter. *Id.* at ¶¶ 24–25. The monthly reports monitoring her Pathway to Work progress indicate that Zezy had some issues becoming "distracted" while on the job due to socializing or watching guests play the slot machines. Pathway to Work Monthly Training Reports, Pl.'s Ex. 23, ECF No. 49-24 at 3, 7. The reports also document issues Zezy had with making inappropriate comments to guests, but also indicate that Zezy made improvements on those issues after counseling. ECF No. 38 at ¶¶ 7–9; ECF No. 49 at ¶¶ 7–9.

      Upon completion of the Pathway to Work program, Zezy applied for an open position as a porter in the Internal Maintenance Department as a porter at defendants' Red Rock Casino, Resort and Spa. *Id.* at ¶ 27. She participated in an initial interview with defendants' Human Resource (HR) personnel and then a second interview with the internal Maintenance Department manager, Josh Husok. *Id.* at ¶ 30; ECF No. 38 at 5, ¶ 14. Four days later, on February 13, 2018, she was extended a conditional offer of employment, contingent on passing a background check and drug testing. ECF No. 1 at ¶ 31; ECF No. 38 at 5, ¶ 14. Upon hearing about the conditional hiring of Zezy, Director of HR at Red Rock, Stacy King, asked Antonio Nunez, the director of housekeeping, and Erika Hernandez from HR, to meet with Zezy to evaluate her ability to work as a Pool Porter. ECF No. 38 at 6, ¶ 17. Nunez and Hernandez met with Zezy on February 21, 2018, a meeting also attended by Zezy's job coach, Tia Campbell. *Id.* at ¶¶ 16–17. Zezy believed the purpose of the meeting was to give Red Rock her passport and social security card and to get her shift starting time. ECF No. 38 at 7 n.36. The meeting instead consisted of situational questions such as "what would you do if a guest asks you the location of the

---

motion, the court cannot responsibly make a judgment as to the import of an assessment done when Zezy was three years' old on her capabilities twenty-eight years later without insights from a relevant expert.

2

restaurant" and "what would you do if a guest asked you where the restroom is[.]" *Id.* at ¶ 18; ECF No. 49 at ¶ 18. Zezy at times answered "yes" to these non-yes-or-no questions and Campbell ultimately did more of the talking than Zezy. ECF No. 39-1 at 134, 185.

At the meeting, Nunez and Hernandez inquired whether Zezy needed accommodations to perform her job. ECF No. 1 at ¶ 32. She replied that she did not. *Id.* The next day, Nunez called Zezy to inform her that she was not qualified for the position and that the hiring process would not move forward. *Id.* at ¶ 33. Zezy filed the instant action on June 16, 2020. ECF No. 1.

## II.     Legal standard

Federal Rule of Civil Procedure 56(c) provides that summary judgment must be granted when there exists no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). Material facts are those which may affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In determining whether a genuine issue of material fact exists, the court must not make credibility determinations or weigh conflicting evidence. *Id.* at 255. Rather, the court must view the evidence in the light most favorable to the non-moving party, drawing all "justifiable inferences" in its favor. *Id.* (internal citation omitted).

The movant bears the initial burden of identifying those portions of the pleadings, discovery, and affidavits which demonstrate the absence of a genuine issue of material fact. *Celotex Corp.*, 477 U.S. at 323; *Nissan Fire & Marine Ins. Co. v. Fritz Companies*, 210 F.3d 1099, 1102 (9th Cir. 2000). Once the moving party has met its burden of production, the nonmoving party must go beyond the pleadings and, by its own affidavits or discovery, set forth specific facts showing that there is a genuine issue for trial. If the nonmoving party fails to produce enough evidence to show a genuine issue of material fact, the moving party wins. *Id.* Conclusory, speculative testimony in affidavits and moving papers is insufficient to raise genuine issues of fact and defeat summary judgment. *Thornhill Pub. Corp. v. Gen. Tel. & Elecs. Corp.*, 594 F.2d 730, 738 (9th Cir. 1979).

### III. Discussion

Zezy brings four claims: (1) failure to accommodate/failure to hire under the ADA for an actual disability, (2) failure to accommodate/failure to hire under the ADA for a perceived disability, (3) disability discrimination in violation of NRS § 613.330 for an actual disability, and (4) disability discrimination in violation of NRS § 613.330 for a perceived disability. ECF No. 1 at 12–15. Defendants seek summary judgment on all four claims, arguing that Zezy failed to prove that she was a qualified individual under the ADA and Nevada state law (which mimics the ADA) and, in the event summary judgment is not appropriate on the merits, that at a minimum, Claims III and IV should be dismissed as duplicative of Claims I and II. ECF No. 38 at 10–13. Defendants also move for summary judgment for Station on all claims based on a lack of a prospective employment relationship with Zezy. *Id.* at 10. I proceed as follows: granting summary judgment for Station on lack of prospective employment relationship; denying summary judgment on Claims III and IV as duplicative of Claims I and II; denying summary judgment on all four counts because I find that there is a material dispute of fact as to whether Zezy was a qualified individual; and denying Zezy's requests to strike defendants' reply brief and Johnson's declaration.

### A. Station is dismissed based on lack of prospective employment relationship.

Defendants argue that summary judgment should be granted to Station because it is the parent company of Red Rock and not Zezy's prospective employer under the law. ECF No. 38 at 10. I agree. "In the absence of special circumstances, a parent corporation is not liable for the Title VII violations of its wholly owned subsidiary." *Watson v. Gulf & W. Indus.*, 650 F.2d 990, 993 (9th Cir. 1981). Special circumstances that the court should consider may include: (1) proof of alter-ego liability; (2) evidence that the parent is liable for the debts of the subsidiary; (3) whether the parent has undercapitalized the subsidiary in a way that defeats potential recovery by the plaintiff; and (4) whether the parent participated in or influenced the employment policies of the subsidiary. *Ozkan v. Am. Casino & Ent. Properties, LLC*, 2014 WL 4105065, at *3

(D. Nev. Aug. 19, 2014) (quotations omitted). Although Zezy names Station as a defendant, she provides no allegations nor evidence establishing any special circumstances in this case. She also neglected to address or rebut defendants' parent-subsidiary argument in her response to summary judgment. Therefore, I grant summary judgment in favor of Station on all four claims. *See Husok v. Station Casinos*, LLC, 2023 U.S. Dist. LEXIS 175260, *4–5 (D. Nev Sept. 29, 2023) (finding no special relationship between Station and Red Rock in employment action and granting summary judgment to Station).

### B. Counts III and IV are not dismissed as duplicative.

Defendants argue that even if the court believes genuine disputes of material fact exist regarding either of the ADA claims, the state statutory claims should be dismissed as duplicative. ECF No. 38 at 13–14. Zezy responds that if the court should entertain dismissing any claims, it should be the federal claims to divest the court of jurisdiction and remand the case to state court. ECF No. 49 at 30. "[A] district court has broad discretion to control its own docket, and that includes the power to dismiss duplicative claims." *See M.M. v. Lafayette Sch. Dist.*, 681 F.3d 1082, 1091 (9th Cir. 2012). While plaintiffs are not permitted double recovery, there is no law prohibiting a plaintiff from pleading alternative causes of action based upon the same underlying conduct. *Cordell v. Greater Columbia Reg'l Support Network*, 2007 U.S. Dist. LEXIS 112585, *28 (E.D. Wash. Apr. 12, 2007); *Teutscher v. Woodson*, 835 F.3d 936, 954 (9th Cir. 2016). The court sees no reason to dismiss Zezy's state law claims at this point and defendants proffer no particular reason why such dismissal is warranted; therefore, I decline to do so at this stage.

### C. Summary judgment is inappropriate on all four counts of discrimination.

Courts analyze disability-discrimination claims using the burden-shifting framework described by *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).[2] *Snead v. Metro. Prop. & Cas. Ins. Co.*,

---

[2] Because this analysis only focuses on whether Zezy is a "qualified individual," the analyses under the ADA discrimination claims for actual disability and perceived disability are the same and court considers them both in the following analysis. Further, Nevada law requires courts to analyze state law disability-discrimination claims under the same framework as the federal substantive law, thus, I consider Zezy's ADA claims and her state law disability-discrimination claims (all four claims) all together in the

5

237 F.3d 1080, 1093 (9th Cir. 2001). Under this analysis, a plaintiff must first establish a prima facie case of discrimination by demonstrating three factors: (1) she is a disabled person within the meaning of the statute; (2) she is a qualified individual with a disability; and (3) she suffered an adverse employment action because of her disability. *Hawn v. Exec. Jet Mgmt., Inc.*, 615 F.3d 1151, 1155 (9th Cir. 2010). If the plaintiff establishes her prima facie case, the burden of production shifts to the employer to articulate some legitimate, nondiscriminatory reason for the challenged action. *Id.* If the defendant meets this burden, the plaintiff must then raise a triable issue of material fact as to whether the defendant's proffered reasons for the termination are mere pretext for unlawful discrimination. *Id.*

Defendants challenge Zezy's discrimination claims on one ground: that she was not a qualified individual under the ADA and Nevada discrimination claims. ECF No. 23 at 10–13. I find that there is a material dispute of fact on this question and thus deny summary judgment on this ground.

### 1. *There is a material dispute of fact whether Zezy was a qualified individual with a disability, so summary judgment is denied on her ADA claims and its state equivalents.*

To determine whether a plaintiff is a "qualified individual," courts engage in a two-step inquiry to analyze (1) "whether the individual satisfies the prerequisites of the job; more specifically, whether 'the individual satisfies the requisite skill, experience, education, and other job-related requirements of the employment position such individual holds or desires"; and (2) "whether 'with or without reasonable accommodation,' the individual is able to 'perform the essential functions of such position.'" *Anthony v. Trax Int'l Corp.*, 955 F.3d 1123, 1128 (9th Cir. 2020) (quoting 29 C.F.R. § 1630.2(m)). "An individual who fails to satisfy the job prerequisites cannot be considered 'qualified' within the meaning of the ADA unless she shows that the prerequisite

---

following analysis. *See Littlefield v. Nevada, ex. rel. Dep't of Pub. Safety*, 195 F. Supp. 3d 1147, 1152 (D. Nev. 2016) ("Nevada courts apply the ADA approach to plaintiff's state law claims.").

is itself discriminatory in effect." *Johnson v. Bd. of Trustees of Boundary Cnty. Sch. Dist. No. 101*, 666 F.3d 561, 567 (9th Cir. 2011). "An employee must show she was qualified at the time of the adverse employment action, rather than at some earlier or later time." *Anthony*, 955 F.3d at 1129.

Defendants do not appear to challenge the first prong of the analysis—that Zezy satisfied the prerequisites for the porter job—but focus on the second prong: her ability to perform the job's "essential functions" with or without a reasonable accommodation. ECF No. 38 at 11. When this element is challenged, the employer has the burden of establishing which job functions are essential as "much of the information which determines those essential functions lies uniquely with the employer." *Samper v. Providence St. Vincent Med. Ctr.*, 675 F.3d 1233, 1237 (9th Cir. 2012) (quoting *Bates v. United Parcel Serv., Inc.*, 511 F.3d 974, 991 (9th Cir. 2007)). Such evidence includes but is not limited to the written job description, a declaration from a supervisor, other employee's work experience in the same position, or the "employer's judgment as to which functions are essential." *Id.* at 1238 (citing 29 C.F.R. § 1630.2(n)(3)).

Defendants assert that "interacting with guests and delivering *Beyond the Best* service" were essential functions of the Red Rock porter position and that Zezy could not perform these functions. ECF No. 38 at 11. To prove that such functions were necessary, they attach the job description for the porter position to their motion, which includes among the "essential functions" being able to "[i]interact with others in a friendly, positive and courteous manner" and being "[r]esponsible for practicing, supporting, and promoting Station Casinos' *Beyond the Best* Company-wide culture and demonstrating Station Casinos' Championship Service Standards at all times." *Id.* at 8. Defendants define "*Beyond the Best*" as the "company mantra for exceptional service to guests." *Id.* at 8 n.44. They also provide a PowerPoint outlining expectations for *Beyond the Best* service which includes things like smiling frequently and treating everyone like a guest. ECF No. 49-26.

Defendants contend that Zezy had problems making inappropriate comments to guests while she was working at Boulder Station and thus could not meet the *Beyond the Best* service level. ECF No. 38 at 11. They also argue that Zezy's inability to meet these standards was evinced during the February 21, 2018 meeting, where she displayed distraction, answered "yes" to non-yes-or-no questions, and where her job coach answered a number of questions for her. *Id.* at 11–12. Defendants further cite to a court's subsequent grant to her mother of guardianship over Zezy in May 2019 and her "difficulties in communicating clearly" during her deposition as evidence that she was not a qualified individual to perform the porter duties at Red Rock. *Id.*

As a threshold matter, the relevant inquiry is whether an employee is qualified "at the time of the adverse employment action, rather than at some earlier or later time." *Anthony*, 955 F.3d at 1129. Thus, defendants' citations to events which occurred after the adverse employment action are unavailing. Simply, defendants could not have considered the impact of the guardianship grant or Zezy's deposition testimony on whether she was qualified at the time of hire. And defendants' citations to previous issues Zezy had in a training program at an earlier time (as it were, a program specifically designed to work out such kinks) are unavailing to the extent that defendants are unable to show that the issues Zezy demonstrated in the past continue to be issues into the present. For example, defendants point out the "inappropriate comments" she made to guests at Boulder Station, but the January 2018 report noted that "Zezy has shown great improvement this month with keeping her opinions to herself while working." Pathway to Work Monthly Training Reports, Pl.'s Ex. 23, ECF No. 49-24 at 13; Oliveri Dep. Tr., Pl.'s Ex. 5, 49-6 at 60:16–61:21.

What is undisputed and relevant is that Zezy had issues focusing during the February 21 interview and that her job coach spoke more than she did during the interview. This is serviceable evidence that Zezy may not have been qualified to perform the essential job functions of the Red Rock Pool Porter position. Defendants also offer testimony of Betty Martin, a supervisor in Internal Maintenance at Boulder Station, who stated that she did not believe

Zezy would be qualified to work as a porter at the Boulder Station following the completion of her training program "[o]nly because she wouldn't stay focused and she would wander off." Martin Dep. Tr., Pl.'s Ex. 11, ECF No. 49-12 at 68: 8-16, 77:23–79:15. However, the conclusion that Zezy was unqualified to work as a porter at Red Rock is far from undisputed. For example, Red Rock's *own director of HR* testified that her understanding was that Zezy "can perform all this[,]" in reference to the description for the Red Rock Porter Job. Johnson Dep., Pl.'s Ex. 9, ECF No. 49-10 at 85–86. Husok also testified that Zezy could "perform all the essential functions of the job" and that his assessment was made based on his interview with her and his multiple years of experience evaluating people for this role. Husok Dep., Pl.'s Ex. 8, ECF No. 49-9 at 131.

In their reply, defendants now submit a declaration of Johnson in which Johnson states that she "misspoke" at her deposition and that her understanding is that Zezy could not perform all the relevant duties. Johnson Decl., Defs.' Ex. B, ECF No. 54-2 at 100. Defendants' reply asserts that "there is every reason to believe Ms. Johnson" in reference to her most recent declaration (ECF No. 54 at 7); but this is precisely what the court is not permitted to do at this stage—make a credibility assessment of Johnson. *S.E.C. v. Koracorp Indus., Inc.*, 575 F.2d 692, 699 (9th Cir. 1978) ("[C]ourts have long recognized that summary judgment is singularly inappropriate where credibility is at issue."). Defendants also argue in their reply that the court should disregard Husok's testimony because he could "never articulate in any detail in his deposition why he thought Zezy could do the job and be a "good fit" and that instead "[w]hat is clear is that Husok has disdain for the input of others" and that he "is not the gold standard for making employment decisions." ECF No. 54 at 16. These are precisely the sort of considerations a jury might consider in assessing whether to put weight on Husok's testimony but, again, are squarely inappropriate for the court to consider at this stage. *See Koracorp Indus., Inc.*, 575 F.2d at 699.

1    In support of summary judgment, defendants also proffer testimony from Johnson that part of the reason to not hire Zezy was because Rita Oliveri, Zezy's job coach, had supposedly told Johnson that Zezy was unable to perform the Pool Porter position. ECF No. 39-1 at 170–71. This is also not undisputed, however. Oliveri testified that she did not recall engaging in such a conversation or talking about those issues with Johnson. ECF No. 49 at 15. If this case proceeds to trial, this will ultimately be a credibility issue for the jury to resolve. Because I cannot find for defendants without making credibility assessments or weighing the evidence myself, I find that there is a material dispute of fact on whether Zezy was qualified for the Red Rock Pool Porter position.[3]

### D. Zezy's motions to strike are denied.

Zezy requests that the court strike defendants' reply brief because it exceeds the page limits when counting the attached exhibits and because defendants' have engaged in "sandbagging" by attaching the substantive declaration of Johnson for the first time (which Zezy also moves to strike separately (ECF No. 57)). ECF No. 56. At heart, Zezy takes issue with the reply brief because it "invite[s] the Court to weigh the evidence and to make credibility determination not allowed under the summary judgment rules[.]" *Id.* at 2–3. Because I deny defendants' motion for summary judgment and find that this case contains credibility determinations which are properly left to the providence of the jury, I deny the request to strike defendants' reply brief as moot and judicially inefficient. Defendants are cautioned however that "[o]rdinarily, a district court will not consider evidence in the context of a motion for summary judgment that is submitted for the first time in reply." *Provenz v. Miller*, 102 F.3d 1478, 1483 (9th

---

[3] The parties also disagree about whether defendants engaged in a good faith effort to provide a reasonable accommodation to Zezy and whether such accommodation was even possible. Zezy argues for example that setting a timer on her phone or watch could have constituted a reasonable accommodation sufficient to resolve any issues with her distraction. ECF No. 49 at 8. However, the record indicates that Zezy never asked for an accommodation and Johnson's and Husok's testimony is not qualified by an understanding that Zezy could only perform the essential functions with the aid of an accommodation. I make no findings here on whether Zezy was qualified with or without an accommodation—indeed, I make no finding that she *was* qualified—only that there is a material dispute of fact as to that conclusion and whether any finding of qualification at trial will be one with or without a reasonable accommodation will be a question for the jury to resolve.

10

Cir. 1996) ("Where new evidence is presented in a reply to a motion for summary judgment, the district court should not consider the new evidence without giving the non-movant an opportunity to respond") (citing *Black v. TIC Inv. Corp.*, 900 F.2d 112, 116 (7th Cir. 1990)). Because it does not change the outcome of this motion, the court nonetheless considered the reply and attendant exhibits, including the Johnson declaration.

Zezy separately requests that the court strike Johnson's affidavit under the sham affidavit rule which "prevents a party who has been examined at length at deposition from 'rais[ing] an issue of fact simply by submitting an affidavit contradicting his own prior testimony[.]" *Yeager v. Bowlin*, 693 F.3d 1076, 1080 (9th Cir. 2012). However, the Ninth Circuit has made clear that district courts cannot disregard an affidavit on summary judgment unless the court can make "a factual determination that the contradiction was actually a 'sham.'" *Kennedy v. Allied Mut. Ins. Co.*, 952 F.2d 262, 266–67 (9th Cir. 1991). Because I was unable to make such a determination on the record, I considered the appended declaration of Johnson and, as discussed above, found that the credibility of Johnson will be properly left to the jury. I thus deny Zezy's motion to strike the Johnson declaration.

## IV. Conclusion

IT IS THEREFORE ORDERED that defendants' motion for summary judgment **[ECF No. 38] is GRANTED in part and DENIED in part.** Summary judgment for Station is granted on all claims and the Clerk of Clerk is kindly directed to enter judgment for Station on all counts. The motion is denied in all other regards.

IT IS FURTHER ORDERED that Farfan's motions to strike **[ECF Nos. 56, 57] are DENIED.**

IT IS FURTHER ORDERED that, pursuant to Local Rule 16-5, this matter is referred to the magistrate judge for a settlement conference.

IT IS FURTHER ORDERED that if the case does not settle, the parties **must** file their proposed joint pretrial order 30 days after the settlement conference.

DATED: January 29, 2024

_____
Cristina D. Silva
United States District Judge